# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

| Tigist Kebede | Case No. 18-12086-KHK |
| Debtor. | Chapter 11 |

### MEMORANDUM OPINION

This matter was before the Court on December 15, 2022, for a hearing on the Court's Order To Show Cause why Fox & Associates Partners, Inc. T/A Tranzon ("Tranzon Fox" or "Tranzon") and Bryan Ross, a chapter 7 panel trustee in the District of Columbia, should not be sanctioned in connection with an undisclosed referral arrangement between the two. That arrangement resulted in undisclosed fees being paid to Mr. Ross in a number of bankruptcy cases in D.C, Maryland and Virginia. Doc. No. 203 - Show Cause Order. Mr. Ross, Tranzon Fox and the Office of the United States Trustee submitted briefs on the matter. Doc. No. 205 - Ross Brief; Doc. No. 204 - Tranzon Brief; Doc. No. 210 – U. S. Trustee Brief. At the hearing the Court dismissed the show cause against Tranzon in deference to the Settlement Agreement described below that had previously been reached between the U.S. Trustee and Tranzon. Additionally, Mr. Ross offered to disgorge his fees. For the reasons that follow, the Court will accept Mr. Ross' offer of disgorgement as a sanction in this matter, as it is the only meaningful remedy to the inexcusable nondisclosure and fee sharing in this case.

### Background

On July 20, 2022, Judge Elizabeth Gunn, Chief Judge of the United States Bankruptcy Court for the District of Columbia, entered an order in Case No. 20-00302-ELG (the "D.C. Case") approving a Settlement Agreement between the Acting United States Trustee for Region Four and Tranzon Fox. The Settlement related to certain inadequate disclosures by Tranzon Fox in

connection with its retention in various bankruptcy cases throughout D.C., Maryland and Virginia. (D.C. Case, Doc. No. 84-2, p. 6).[1] During an investigation into Tranzon Fox's retention as an auctioneer in the D.C. case, the U.S. Trustee became aware of an undisclosed informal referral agreement between Tranzon Fox and Mr. Ross dating back to 2013 whereby Tranzon Fox agreed to pay Ross as much as 22.5% of any commission (net of expenses) that Tranzon Fox received as a result of a transaction referred to Tranzon Fox by Mr. Ross. The Settlement released claims by the U.S. Trustee against Tranzon Fox relating to the failure to disclose the arrangement between Ross and Tranzon Fox, but specifically excluded Mr. Ross from that release.

The Settlement, among other things, indicates that Mr. Ross made referrals to Tranzon Fox in the above-captioned case and that the financial arrangement between the two was not disclosed. Following entry of Judge Gunn's Order approving the Settlement in the D.C. Case, this Court reopened the above-captioned case to determine whether Tranzon and Mr. Ross should be sanctioned for their failure to disclose the referral arrangement. After a status hearing the Court entered the Show Cause Order.

**Findings of Fact**

On June 13, 2018, Tigiste Kebede (the "Debtor") filed a petition under chapter 11 of the Bankruptcy Code. Doc. No. 1. Thereafter, the Court approved the Debtor's Application to Employ Counsel. Doc. No. 25. On July 28, 2019, the Debtor filed the Application to Employ Tranzon as

---

[1] In addition to the case at bar, Tranzon and Mr. Ross failed to disclose their referral arrangement in the following other cases: Impulse, LLC, Case No. 13-00791 (Bankr. D.D.C.); 2412 Group, Inc., Case No. 15-00073 (Bankr. D.D.C.); Lisa Shaw, Case No. 17-00225 (Bankr. D.D.C.); Harriet Whitney Home for Senior Citizens, Case No. 19-00745 (Bankr. D.D.C.); 4915 Quarles St. LLC, Case No. 20-00497 (Bankr. D.D.C.); James G. Sasscer, Jr., Case No. 06-13476 (Bankr. D. Md.); Peter Charles Gems & Madonna K. Gems, Case No. 08-21179 (Bankr. D. Md.); Daniel Fields, Jr., Case No. 13-27190 (Bankr. D. Md.); Stanley Green, Case No. 13-30317 (Bankr. D. Md.); Risikat Shola Balogun, Case No. 14-11119 (Bankr. D. Md.); Larry A. Rollins, Case No. 14-16757 (Bankr. D. Md.); Catalyst Group Limited Partnership, Case No. 14-20624 (Bankr. D. Md.); Detrick Leggett & Renee Haynes, Case No. 15-15390 (Bankr. D. Md.); James I. Williams, Case No. 16-13764 (Bankr. D. Md.); SMWS Group, LLC, Case No. 19-12941 (Bankr. D. Md.); Madelyn E. Miles, Case No. 19-19729 (Bankr. D. Md.). D.C. Case, Doc. No. 84-2, p. 6.

Realtor to assist in selling her real property located at 5808 14th Street, NW, Washington, D.C. 20011. Doc. No. 83 - Employment Application (the "Employment Application"). The Employment Application disclosed that the Debtor would pay the realtor a seven percent (7%) commission on the purchase price of the Property but made no mention of Mr. Ross's involvement. Doc. No. 83, p. 2. In his verified statement attached to the Employment Application, Jeffrey Stein, a partner of Tranzon Fox, declared the following under penalty of perjury:

> "Neither I nor Tranzon Fox have any connection with, the Debtor, the creditors, other parties in interest, their attorneys or accountants, the United States Trustee or anyone employed by the United States Trustee."

Doc. No. 83-2 (the "Verified Statement"). That Employment Application did not disclose Bryan Ross' involvement and that he would receive a fee from the transaction.[2] When the real property was ultimately sold, neither the Motion to Approve Sale nor the Report of Sale disclosed that Mr. Ross would receive a fee. See Doc. No. 113 and Doc. No. 136.

Mr. Ross has maintained an ongoing informal relationship with Tranzon for the past nine years whereby he would contact Debtor's counsel in new chapter 11 cases in Virginia, Maryland and the District of Columbia and recommend the use of Tranzon's services. *See* Doc. No. 205, p. 3. If Tranzon was retained in the case, Mr. Ross would "remain involved in the sales process until completion of the auction." *Id*. For his services, Mr. Ross would receive a "consulting fee" which was a percentage of any commission received by Tranzon. According to Mr. Ross, the consulting fee was paid out of Tranzon's compensation, which was paid from a buyer's premium—an amount

---

[2] As noted by Mr. Ross in his Brief,

> For the past forty-two years, Ross has served on the panel of trustees maintained by the Office of the United States Trustee in the District of Columbia. Over that time period, he has acted as a trustee in hundreds of cases filed in the District of Columbia under Chapter 7 of the Bankruptcy Code.

Doc. No. 205, p. 2.

3

consisting of 10% of the purchase price added to the high bid and included in the amount the buyer paid to the seller. Mr. Ross asserts in his Brief that he "played no role in the preparation or filing of the Employment Application or the Verified Statement, and he did not receive a copy of either document for review prior to their filing. Doc. No. 205, p. 4. However, it appears that statement is not true.

Mr. Ross's emails to Mr. Stein at Tranzon and to Debtor's counsel in this case indicate that Mr. Ross participated in the drafting of the Employment Application. *See* Doc. No. 210, p. 3. ("…I thought it would save time if we put together a draft for Jeff Sherman to review and sign…"). *Id*. ("To speed things up Jeff Stein and I drafted an application, notice and order to retain Tranzon"); Doc. No. 210, Exhibits A, B and C. Contrary to Mr. Ross' claim that he played no role in the preparation or filing of the Employment Application, he participated in drafting it and then shepherded it to approval, and ultimately to completion of the contemplated auction. Doc. No. 210, Exhibits D, E and L. Mr. Ross even provided advice on how to address the U.S. Trustee's objection to the Employment Application. Doc. No. 210, Exhibits F, G, H and I.

Mr. Ross ultimately earned $9,150 in connection with the sale. Doc. No. 205, p. 7. Following the sale, the unsecured creditors in the case were paid back in full and the Debtor received a surplus from the estate.

At the Show Cause Hearing, Mr. Ross appeared and offered to disgorge the consulting fee he received in connection with this case.

## Conclusions of Law

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

4

1. Nondisclosure of the Referral Arrangement

Section 327 of the Bankruptcy Code allows a debtor in possession, with court approval, to employ professionals that do not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a). Federal Rule of Bankruptcy Procedure 2014 governs the employment application process and requires as follows:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee..

Fed. R. Bankr. P. 2014(a). At the core of the bankruptcy process is disclosure and transparency. While Mr. Ross may claim that the disclosure obligation belongs to Tranzon and not to him, the Court is not persuaded by this argument based on the facts in this case. First, Mr. Ross actually drafted the Employment Application and even offered advice regarding objections to it. Second, by drafting but not signing the Employment Application and offering advice on the document and the sale process while simultaneously choosing not to appear as an attorney of record in the case (i.e., ghostwriting), Mr. Ross violated Federal Rule of Bankruptcy Procedure 9011. As Judge Robert A. Gordon, U.S. Bankruptcy Judge for the District of Maryland observed in *In re Dreamplay, Inc.*,

> Rule 9011 provides that every paper filed in a bankruptcy case, "shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number...." FED. R. BANKR. P. 9011(a). The Rule's express language underscores its primary

> purpose: to insure that a paper's author take responsibility for what the paper says and to hold the author accountable for statements made within the paper's four corners.

*In re Dreamplay, Inc.*, 534 B.R. 106, 119 (Bankr. D. Md. 2015)[3]. While the Court will not enter sanctions under Rule 9011, Mr. Ross' violation of that Rule, combined with his patently untrue response to the Show Cause Order underscores why he should not be able to escape liability for his nondisclosure when he should have signed the document in the first place. The Court finds that Mr. Ross' extensive experience as a bankruptcy attorney and panel trustee further underscores why this Court must hold him accountable.

2. Impermissible Fee Sharing

Subject to exceptions that do not apply in this case, section 504 of the Bankruptcy Code provides in relevant part that,

> a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—
> (1) any such compensation or reimbursement with another person; or
> (2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a).[4] Seeking to avoid liability under section 504, Mr. Ross argues that the compensation terms of the Tranzon retention were approved under section 328, that his fees ultimately were not paid from estate property and that based on the foregoing, the fee is not subject to the prohibition on fee sharing in section 504. Mr. Ross argues that section 504's cross reference to administrative expense claims inherently limits section 504's applicability to compensation

---

[3] While the *Dreamplay* case involved a ghostwriter avoiding bar admission and *pro hac vice* requirements for the relevant court and engaged in the unauthorized practice of law, the Court finds that *Dreamplay*'s reasoning equally applies to a ghostwriter who avoids the disclosure requirements under Federal Rule of Bankruptcy Procedure 2014.

[4] Mr. Ross is not a partner or associate of Tranzon (504(b)(1)), is not an involuntary petitioning creditor's attorney (503(b)(2)) and is not a participant in a bona fide public service attorney referral program (504(c)).

approved under section 330 that is paid out of the estate. In short, he argues that because the commission was derived from a "buyer's premium" those funds were not property of the bankruptcy estate. The Court finds these arguments unpersuasive.

Mr. Ross appears to conflate the "approval" of fees with the "payment" of fees to professionals. First, his reliance on section 328 which requires that fees be reasonable is misplaced. It cannot be confused with section 327, which controls the employment of professionals. In fact, the Order approving Tranzon's employment specifically states that the Employment Application is approved under 11 U.S.C. § 327(a) rather than section 328. Second, approval of *payment* of fees to professionals is controlled by section 330. This section contains no restrictions on the source of the funds from which fees may be paid. Moreover, the applicability of section 504, which addresses fee sharing, is not limited to property of the estate, so Mr. Ross' argument that the source of his portion of the commission - the buyer's premium – places the payment outside the constraints of this Section is simply incorrect. While section 504 specifically lays out express exceptions in subsections (b) and (c) that are not applicable here, it contains no carve out for payments that are not made from property of the estate. It would be improper for this Court to read in language that simply does not exist in the statute. As a result, the Court is left with the inescapable conclusion that the referral arrangement violated section 504 because a person, Tranzon in this case, received compensation under section 503(b)(2) as compensation paid under section 330, and that compensation was shared with another person, Mr. Ross.

Given Mr. Ross' extensive experience as a bankruptcy attorney and over 40-years of experience as a panel trustee, the Court is disturbed by his behavior in this case. As previously stated, the Court is concerned by Mr. Ross' lapse in professional judgment in ghostwriting and advising on an employment application without signing it, thereby avoiding disclosure obligations

that are intended to protect the integrity of the bankruptcy system. This is in addition to his flagrant violation of the Bankruptcy Code's prohibition on fee sharing. Adding insult to injury, when seeking to avoid liability under this Court's Show Cause Order, Mr. Ross misrepresented his involvement in the filing of legal documents in this case, claiming he was not involved and that he had not seen the documents prior to filing, when he actually drafted them and continued to provide advice to Debtor's counsel and Tranzon throughout the sale process. The Court now turns to the appropriate sanction.

**Sanctions**

A bankruptcy court is given wide latitude in fashioning an appropriate sanction for unethical behavior, including the disgorgement of fees. *In re Soulisak*, 227 B.R. 77, 82 (Bankr. E.D. Va. 1998). As recognized by courts in the Fourth Circuit and elsewhere, "the presumptive remedy" for a violation of section 504 "is denial or disgorgement of compensation." *In re Waters*, 634 B.R. 478, 495 (Bankr. D.S.C. 2021).

The only remaining issue is what sanction would be the appropriate to impose for the violation of section 504 and Mr. Ross' failure to disclose, had Mr. Ross not offered to disgorge the $9,150 consulting fee he collected. In this case, the net proceeds of sale were more than sufficient to pay all unsecured creditors in full, and the remaining surplus was turned over to the Debtor so the estate was not directly harmed by the referral arrangement. However, based on Mr. Ross' failures to disclose the referral arrangement, his violation of the fee sharing prohibition and the misrepresentations regarding his involvement in the Employment Application, the Court finds that disgorgement is appropriate in this case. Therefore, those fees will be disgorged and paid to the Debtor, Tigist Kebede.

A separate order will issue.

Date: May 2 2023
Alexandria, Virginia

/s/ Klinette H Kindred
Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: May 2, 2023

<u>Copies to</u>:

Steven H. Greenfeld
Cohen Baldinger & Greenfeld, LLC
2600 Tower Oaks Blvd., Suite 290
Rockville, MD 20852
*Counsel for Debtor*

Robert M. Marino, Esq.
REDMON, PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314-3143
*Counsel for Bryan S. Ross*

Christopher A. Jones
Alexandra G. DeSimone
WHITEFORD, TAYLOR & PRESTON, L.L.P.
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia
*Counsel for Fox & Associates Partners, Inc. T/A Tranzon Fox*

Kristen S. Eustis
Trial Attorney
Office of United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314